# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

BRIDGET PARKER,     )
             )
     Plaintiff,   )
             )
v.           ) Docket no. 2:17-CV-216-GZS
             )
JOSH DALL-LEIGHTON, et al.,  )
             )
             )
     Defendants.  )

## ORDER ON DEFENDANT RENEE SHANKS'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Before the Court is Defendant Renee Shanks's Motion for Summary Judgment on Plaintiff's Claims of Negligence and Negligent Infliction of Emotional Distress (ECF No. 87). For the following reasons, the Motion is GRANTED.

## I.  FACTUAL BACKGROUND

For purposes of Defendant's Motion, the parties have stipulated to the following facts (see Stipulation of Uncontested Facts (ECF No. 93)):

Plaintiff Bridget Parker[1] was an inmate of the Maine Department of Corrections from approximately January 2012 through July 19, 2016. Parker was transferred to the Southern Maine Re-entry Center in Alfred, Maine, in September 2014. While Parker was an inmate at the Re-entry Center, Defendants Joshua Dall-Leighton and Renee Shanks were both corrections officers at the facility. Parker claims that Dall-Leighton sexually assaulted her on five different occasions during

---

[1] The Court notes that Plaintiff's given name is occasionally spelled "Bridgett" in the summary judgment record.

her time at the Re-entry Center, with the first occasion occurring on December 10, 2015, and the last on February 3, 2016.  Parker claims that she first told Shanks about the sexual contact between her and Dall-Leighton in a conversation towards the end of December 2015, and discussed the ensuing sexual incidents with Shanks.  Parker consumed alcohol on March 31, 2016, was reported by Shanks, and was thereafter sent from the Re-entry Center to the Windham Correctional Center.  While at Windham, Parker disclosed to another inmate that she had been sexually assaulted and this other inmate reported it to the authorities.  On May 26, 2016, Parker spoke with Department of Corrections Investigator David Verrier about the sexual incidents with Dall-Leighton.

On or about June 22, 2016, Parker sent several notices of claim regarding the sexual assaults to Dall-Leighton, several high-ranking officials with the Department of Corrections, and the Maine Attorney General.  Parker also sent notices of claim to a "John Doe" and a "Jane Doe." The "Jane Doe" notice is dated June 22, 2016, and addressed to "Jane Doe, Employee of Maine Department of Corrections" at "Maine Correctional Center, 17 Mallison Falls Road, Windham, Maine 04062." (ECF No. 93-6, PageID # 603).[2]  In the section of the notice titled "Basis of Claim," Parker described her sexual contact with Dall-Leighton and stated, "On information and belief, at least one other employee of the Department of Corrections knew that . . . Dall-Leighton was having an illegal sexual relationship with the Claimant."  (Id.)  A footnote to the notice states:

> Due to lack of secure attorney-client communications, as well as the fact that . . . Parker previously wrote confidential letters   to [her attorney], which were confiscated by prison staff, prior to being mailed out, which . . . Parker believes were opened and read, she does not feel confident in fully communicating with [her attorney] via mail or phone.  Therefore, some essential names have not been able to be provided, but this notice will be amended appropriately when the additional information has been obtained.

---

[2] Not all of the notices are clearly dated, but the parties have stipulated that the notice to "Jane Doe" was dated June 22, 2016.

(Id.)  The "at least one other employee" language and the footnote are included in all of the notices of claim.

Parker did not allege to authorities with the Department of Corrections that she had told Shanks about the sexual incidents until she was released from custody on or about July 19, 2016.[3] Parker claims she did not name Shanks until she was released from custody because "(a)fter the investigation with Dall[-Leighton] and the emotional turmoil that caused, along with the fact that [Shanks] is a really well-liked [corrections officer] at the re-entry center, (Parker) was just fearful of what the other guards and/or inmates might do if (Parker) caused more of . . . an uproar in the facility.  (Parker) wanted to let them know, but [she] was just scared to do it."  (Stipulation of Uncontested Facts ¶ 14, PageID # 568.)  None of the notices of claim were ever amended in writing to name Shanks.

On August 26, 2016, counsel for Parker sent Investigator Verrier an affidavit by Parker in which she detailed her allegations that she told Shanks about the sexual assaults and that Shanks did not take action to report or actively prevent them.  The Complaint in this matter naming Shanks was filed with this Court on June 14, 2017.

---

[3] The Court notes that it is not entirely clear whether or not the parties intended to stipulate that Parker orally informed corrections authorities about her allegations against Shanks around the time that she was released from custody in July 2016.  *Compare* Stipulation of Uncontested Facts (ECF No. 93) ¶ 10, PageID # 568 ("That Parker did not disclose to the authorities with the Department of Corrections that she allegedly told Shanks about this sex between her and Dall[-Leighton] until Parker was released from custody on or about July 19, 2016") *with* Def.'s Resp. to Pl.'s Add'l Statement of Uncontested Facts (ECF No. 97) ¶ 4, PageID # 650 ("The Defendant .  .  . admits . . . that David Verrier, an investigator with the Maine Department of Corrections, was the first person to receive any notice that Bridget Parker was alleging wrongdoing by Renee Shanks, and that claim was first made on August 26, 20[16] when the Bridget Parker Affidavit was sent to David Verrier").  Drawing all reasonable inferences in favor of Parker, the non-moving party, the Court accepts that Parker orally informed corrections authorities about her allegations regarding Shanks on or about the date of her release.

## II.    DISCUSSION

A party is entitled to summary judgment if, on the record before the court, it appears "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this case, there are no material factual disputes at issue. The Court must only consider whether Defendant is entitled to judgment as a matter of law.

The Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. §§ 8101-8118, which governs tort suits against the State of Maine and its employees, provides,

> **1. Notice requirements for filing.**  Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:
>
> > **A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
> >
> > **B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
> >
> > **C.** The name and address of any governmental employee involved, if known;
> >
> > **D.** A concise statement of the nature and extent of the injury claimed to have been suffered; and
> >
> > **E.** A statement of the amount of monetary damages claimed.

14 M.R.S.A. § 8107(1).  The Act further provides that "[i]f the claim is against the State or an employee thereof, copies of the notice shall be addressed to and filed with the state department, board, agency, commission or authority whose act or omission is said to have caused the injury and the Attorney General." Id. § 8107(3)(A).[4]  Finally, the Act provides,

---

[4] For purposes of the Maine Tort Claims Act, "'State' means the State of Maine or any office, department, agency, authority, commission, board, institution, hospital or other instrumentality of the State . . . ." 14 M.R.S.A. § 8102(4).

**4. Substantial notice compliance required.** No claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with. A claim filed under this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby.

Id. § 8107(4). "[F]ailure to comply with the notice provision bars the claim, unless (1) the errors in a plaintiff's notice constitute mere inaccuracies, and (2) the governmental entity is unable to show prejudice." Deschenes v. City of Sanford, 137 A.3d 198, 202 (Me. 2016) (internal citation and quotation marks omitted). Written notice is *always required*; "a person cannot substantially comply with the notice requirement of the [MTCA] without filing some type of *written* notice within 180 days after a claim accrues." Id. at 199; see also Erickson v. State, 444 A.2d 345, 349 (Me. 1982) ("[T]he substantial compliance exception is applicable only when the 180-day requirement of § 8107(1) is satisfied.") "The general test for determining when a cause of action accrues is when a plaintiff received a judicially recognizable injury."[5] McLaughlin v. Superintending Sch. Comm. Of Lincolnville, 832 A.2d 782, 788 (Me. 2003) (quotation marks omitted).

Plaintiff has brought claims against Shanks based on her alleged failure to stop the sexual assaults by Dall-Leighton after Plaintiff told Shanks about the assaults. Under the MTCA, Plaintiff was required to provide proper written notice of her state tort claims against Shanks within 180 days of their accrual. Putting aside the issue of when Plaintiff's claims against Shanks precisely accrued, the undisputed facts demonstrate that Plaintiff never provided anything even approximating substantial compliance with the MTCA's notice requirements. Her initial notices of claim filed around June 22, 2016, did not comply with the notice requirement in that they (1)

---

[5] To the extent there may be a "discovery rule" applicable to the Maine Tort Claims Act, see, e.g., Springer v. Seaman, 662 F. Supp. 229, 230 (D. Me. 1987), such a rule is not implicated in this case.

did not name Shanks even though Plaintiff knew her identity and (2) did not adequately provide notice that Plaintiff was bringing any claim against a corrections officer for negligently failing to stop Dall-Leighton's sexual assaults.  See 14 M.R.S.A. § 8107(1)(B), (C), (D).

Plaintiff contends that the June 22 notices were "supplemented" by her subsequent provision of the affidavit to Investigator Verrier on August 26, 2016, in which she details her allegations against Shanks.[6]  However, on this record, this Court cannot conclude that the affidavit constituted adequate notice because there is no evidence that it was received by the Attorney General and "an official [within the Department of Corrections] having authority to deal with [P]laintiff's claim or [an] official . . . charged with the duty of transmitting the notice to the proper officials."[7]  Faucher v. City of Auburn, 465 A.2d 1120, 1123 (Me. 1983); see also Palm v. Sisters of Charity Health, Sys., 537 F. Supp. 2d 228, 232 (D. Me. 2008); McCarthy v. Inhabitants of Town of Kennebunkport, 366 F. Supp. 2d 165, 168 (D. Me. 2005); Pepperman v. Barrett, 661 A.2d 1124, 1126 (Me. 1995).  Even if it was theoretically possible for two inadequate attempts at providing notice to collectively provide adequate notice, on this record, the Court cannot conclude that the proper officials were provided notice that Plaintiff was bringing claims against Shanks related to the sexual assaults by Dall-Leighton.  Further, although the Court does not consider the precise date of accrual to be dispositive, the Court notes that Plaintiff's claims against Shanks may have accrued by February 3, 2016, the date of the last sexual assault of Plaintiff by Dall-Leighton.  If

_____

[6] The Court does not accept, and Plaintiff has provided no precedential support for, the contention that Shanks does not have "standing" to raise the notice issue.  In fact, courts have frequently dismissed claims against state or local government employees based on a failure to provide proper notification to the parties identified in § 8107(3).  See, e.g., Long v. Abbott, No. 2:15-CV-00291-JAW, 2017 WL 829145, at *29 (D. Me. Mar. 1, 2017); Pew v. Scopino, 904 F. Supp. 18, 32-33 (D. Me. 1995); Hinkley v. Penobscot Valley Hosp., 794 A.2d 643, 647 (Me. 2002); Pepperman v. Barrett, 661 A.2d 1124, 1126 (Me. 1995).

[7] Although the Law Court has held that "a notice that was sufficient in all other respects would substantially comply with the statute even if it was served on the real party in interest instead of the official designated by the statute to receive notice," Pepperman, 661 A.2d at 1126 n.2, that holding has no bearing on this case because there is no evidence that the August 2016 affidavit was served on Shanks.

February 3, 2016, is considered the accrual date, the August 26, 2016 disclosure to the investigator falls outside the 180-day notice period regardless of its adequacy.


### III.    CONCLUSION

Because Plaintiff did not comply with the notice provisions of the MTCA regarding her state tort claims against Defendant Shanks, the Court GRANTS Defendant's Motion for Summary Judgment.    The Negligence and Negligent Infliction of Emotional Distress Claims against Defendant Shanks are DISMISSED with prejudice.    Plaintiff's Eighth Amendment claim for deliberate indifference pursuant to 42 U.S.C. § 1983 is the sole remaining claim for trial against Defendant Shanks.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 29th day of June, 2018.