UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIDGET PARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 2:17-cv-00216-GZS |
| | ) |
| JOSH DALL-LEIGHTON, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff's Motion for Default Judgment (ECF No. 46), which was filed on January 19, 2018. Default entered against Defendant, Josh Dall-Leighton, on September 11, 2017, for his failure to file a responsive pleading. Thereafter, following its resolution of all other claims in this case, the Court held a hearing to ascertain the amount of damages, if any, owed to Plaintiff.[1] In accordance with Federal Rules of Civil Procedure 52 and 55(b), the Court now GRANTS Plaintiff's Motion for Default Judgment and makes the following findings of fact and conclusions of law.

**I. LEGAL STANDARD**

Pursuant to Rule 55(b), a plaintiff seeking default judgment "must apply to the court" whenever the amount of damages claimed is not a "sum certain." Fed. R. Civ. P. 55(b). It is settled law that, upon entry of default, the defaulted party concedes the well-pleaded facts in the complaint. See Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992). As long

---

[1] Defendant did not appear at the damages hearing, which was held over two separate days -- September 13 and 17, 2018. At the hearing, Plaintiff testified and called two other witnesses: Nichole Kelly, her nurse practitioner, and Amy Barnett, her substance abuse counselor.

as those facts are sufficient to state a claim upon which relief can be granted, the defendant's liability is established at the moment of default. See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 41 (1st Cir. 2012); Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985). However, it is also settled that a defendant's default does not establish the amount of damages owed to the plaintiff for purposes of default judgment. See G. & C. Merriam Co. v. Webster Dictionary Co., Inc., 639 F.2d 29, 34 n.7 (1st Cir. 1980). Therefore, where a plaintiff's claim for damages is not ascertainable from the pleadings, the court should hold a post-default hearing to appraise the damage total. See Graham v. Malone Freight Lines, Inc., 314 F.3d 7, 16 n.12 (1st Cir. 1999). Here, as briefly outlined below, Plaintiff's Complaint has adequately pleaded multiple claims, thereby establishing Defendant's liability. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that a plaintiff must "state a claim to relief that is plausible on its face"). Since Plaintiff's Complaint does not claim damages for a sum certain, the Court now resolves the amount of damages owed to her in light of the evidence presented at the hearing.

## II.  FINDINGS OF FACT

On approximately September 26, 2014, Plaintiff Bridget Parker ("Parker") was sent to the Southern Maine Re-entry Center in Alfred, Maine, as part of a state prison sentence. At that time, Defendant Josh Dall-Leighton ("Dall-Leighton") was employed as a corrections officer at the Re-entry Center. Shortly after Parker arrived, Dall-Leighton began to make comments about her appearance, which Parker considered inappropriate but, at that point, did not find concerning. By November, 2015, however, Parker could tell that Dall-Leighton had taken a serious sexual interest in her.

In December, 2015, Dall-Leighton initiated the first of several encounters in which he performed non-consensual sex acts on Parker. One of Dall-Leighton's official duties was to drive

2

Parker and other inmates to and from off-site locations where they attended work and school. On approximately December 10, while driving Parker home from work, Dall-Leighton pulled his Department of Corrections van off to the side of the road, parked, and exited. He then opened the passenger door to gain access to where Parker was sitting, kissed her, removed her pants, and performed oral sex on her. Parker did not consent to this touching, and felt compelled to comply with Dall-Leighton because of his position of power and control over her. After returning to the Re-entry Center that day, Dall-Leighton continued to touch Parker's buttock and grab her arm, making Parker uncomfortable.

The next incident occurred on the following Saturday, December 12, as Dall-Leighton transported Parker to school. This time, Dall-Leighton pulled off on a dirt road, and instructed Parker to get in the back of the van, where he kissed Parker and performed oral sex on her. Again, Parker did not consent to this touching. She was frightened and nervous so she pretended to orgasm hoping that Dall-Leighton would stop and drive her to school, which he did. On another transport a few days later, Dall-Leighton repeatedly tried to touch Parker but she pushed him away each time. Parker felt she could not verbally protest these advances due to the power disparity in their relationship. Another incident occurred on December 30, 2015, after Parker returned from a furlough. On this occasion, Dall-Leighton picked Parker up from work in the evening and drove to get fuel. Afterwards, when it had become dark outside, he returned the van to Parker's employer's parking lot. Dall-Leighton then took Parker to the back of the van, removed Parker's pants as well as his own and penetrated Parker while wearing a condom. Parker did not consent and was forced to have sex with Dall-Leighton.

The next time Dall-Leighton drove Parker to school, he informed her that he carries the sexually transmitted disease, herpes. Thereafter, Dall-Leighton forced Parker into non-consensual

3

sexual intercourse twice more. Like the earlier encounters, both of these incidents occurred in a Department of Corrections van. However, unlike the third incident, Parker did not see Dall-Leighton use a condom either time. Following the last incident, Parker was so desperate to escape Dall-Leighton's conduct that she acquired a bottle of alcohol and became intoxicated so that she could be sent back to prison. Upon returning to prison, Parker confided in another inmate who reported Dall-Leighton's behavior to the authorities.

As a result of these non-consensual sexual encounters, Dall-Leighton transmitted the herpes virus to Parker. In July, 2015, before leaving the re-entry center, Parker was diagnosed with genital herpes and received treatment for it. Genital herpes, or HSV-2, is incurable and, in many cases, manifests itself in the form painful lesion outbreaks on and around the genitals. On average, a person with HSV-2 endures four outbreaks per year, although the frequency varies by individual. Since July, 2015, Parker has had several such outbreaks, which have been severe enough to cause scarring. Not only is it likely that these outbreaks will continue to occur and require treatment going forward, but also, Parker will be forced to navigate the burden of disclosing her condition to all future sexual partners. Indeed, her condition has already put such strain on her romantic relationships, that she is unsure whether she can continue to pursue these types of relationships at all.

Dall-Leighton's actions have also generated serious mental health issues for Parker. Since the ordeal, she has struggled with depression, anxiety, and panic attacks all related to Dall-Leighton's behavior. These problems have interfered with Parker's sobriety, caused her to lose sleep, hindered her focus in school, and impaired her relationship with her family. She now fears all men who wear uniforms similar to those worn by corrections officers, and dislikes being touched to the point that she has had difficulty hugging her children. Counseling has helped Parker

make progress on some of these issues, but her suffering is such that she considers it necessary to continue treatment into the foreseeable future. Even though she has been released from prison, Parker feels that the psychological repercussions of Dall-Leighton's behavior have stopped her from being able to move forward with her life.

## III. CONCLUSIONS OF LAW

Plaintiff claims that Defendant's actions amounted to: (1) civil assault and battery; and (2) a violation of her Eighth Amendment rights pursuant to 42 U.S.C. § 1983. The facts alleged in the Complaint (ECF No. 1) are sufficient to state a claim for both offenses.[2]

### A. Assault and Battery Claim (Count I)

In Maine, the intentional tort of assault and battery has been defined as "an unlawful touching of the person of another, unpermitted and unprivileged, done with the intention of bringing about a harmful or offensive contact." Bucci v. Essex Ins. Co., 393 F.3d 285, 297 (1st Cir. 2005) (citing Wilson v. State, 268 A.2d 484, 486-487 (1970)). Though the Law Court has never directly defined the term "offensive contact," it has indicated that the "notion of offensive physical contact," as contained in the criminal assault statute, has the same meaning as the Restatement's definition of battery. See State v. Rembert, 658 A.2d 656, 658 (Me. 1995) (citing Restatement (Second) of Torts § 18). The Restatement defines "offensive contact" as contact that "offends a reasonable sense of personal dignity." Restatement (Second) of Torts § 19. There is no question that non-consensual sex acts offend a reasonable sense of personal dignity or that Defendant intended to bring about such offensive contact with the Plaintiff. See Pattershall v. Jenness, 485 A.2d 980, 984 (Me. 1984) (explaining that "[t]o act intentionally in tort is to act with

---

[2] For purposes of this order, the Court does not address Plaintiff's other claims as there is no evidence or suggestion that those claims warrant an award of damages above and beyond the damages the Court now awards based on Counts I, X & XI.

substantial certainty as to the consequences of one's action"). Further, the intentional contact was harmful to Plaintiff, and Defendant knew it would be harmful, particularly as he was aware that he had herpes. See id. Therefore, the facts establish Defendant's liability for assault and battery.

### B. Claim Under 42 U.S.C. § 1983 (Count XI)

Section 1983 "supplies a cause of action against any person who, while acting under color of state law, violates another person's constitutional rights." Morse v. Cloutier, 869 F.3d 16, 20 n.1 (1st Cir. 2017). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). To succeed on a § 1983 claim against a prison official under the Eighth Amendment, a plaintiff must show that the official: (1) engaged in "objectively, sufficiently serious" conduct; and (2) acted with "deliberate indifference" to an inmate's health or safety. Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Though the Supreme Court has not defined the term "sufficiently serious," numerous courts have found that the sexual abuse or harassment of an inmate may rise to that level. See Chao v. Ballista, 772 F. Supp. 2d. 337, 347-348 (D. Mass. 2011) (listing cases).

Under the circumstances of this case, it is clear that Defendant's repeated non-consensual sexual contact with Parker was "sufficiently serious" within the meaning of the test. See Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) ("there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation"). Defendant also acted in a way that was "deliberately indifferent" to Parker's health given that he knew he had herpes at the time of the non-consensual sexual contact. See Farmer, 511 U.S. at 837 (stating that to be deliberately indifferent "the official

6

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Defendant is thus liable under § 1983 for violating Parker's Eighth Amendment rights.[3]

### C. Compensatory Damages

As a result of the assault and battery and the related deprivation of Parker's Eighth Amendment rights, Plaintiff has endured physical pain and suffering, physical impairment, and mental anguish, which are all expected to continue into the foreseeable future. The Court concludes that Dall-Leighton proximately caused these damages, and awards Plaintiff $900,000 in compensatory damages.

### D. Punitive Damages

Punitive damages are available under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "This showing is to be made by a preponderance of the evidence." Doe v. Manson, No. 99-262-P-DMC, 2000 WL 893396, at *4 (D. Me. June 22, 2000) (citing Fishman v. Clancy, 763 F.2d 485, 489 (1st Cir. 1985)). Punitive damages are available under Maine law where a plaintiff can show, by clear and convincing evidence, that the defendant's acts were motivated by ill will toward the plaintiff, or where the defendant's behavior "is so outrageous that malice . . . can be implied." Tuttle v. Raymond, 494 A.2d 1353, 1361, 1363 (Me. 1985). The facts alleged in the Complaint satisfy both of these standards.

---

[3] The Court reads Plaintiff's Complaint as making a related state law claim for the violation of her Eighth Amendment rights under the Maine Civil Rights Act. 5 M.R.S.A. § 4682. The First Circuit has held that "[t]he disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA." Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2009). Consequently, Defendant is also liable to Plaintiff under the MCRA.

Having considered all of the relevant aggravating and mitigating factors under both state law and federal constitutional law,[4] the Court additionally awards Plaintiff $200,000 in punitive damages. See Shannon v. Sasseville, 684 F. Supp. 2d 169, 174-175 (D. Me. 2010).

### IV. CONCLUSION

On the basis of the foregoing findings and conclusions, the Court GRANTS Plaintiff's Motion for Default Judgment (ECF No. 46) against Defendant Dall-Leighton, and awards Plaintiff total damages of $1,100,000. In accordance with this ruling, the Clerk is directed to enter judgment against Defendant Dall-Leighton on Counts I and XI in the amount of $900,000, and on Count X in the amount of $200,000.

To the extent Plaintiff still seeks to recover attorney's fees and costs in addition to this award, she may file a motion in accordance with the appropriate rules.[5] See Fed. R. Civ. P. 54(d); D. Me. Local Rules 54.2 & 54.3.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 25th day of September, 2018.

---

[4] Notably, Plaintiff failed to introduce any evidence of Defendant's financial resources.

[5] At the damages hearing, Plaintiff introduced an "Invoice for Services and Travel" (Pl. Ex. G) for one of her witnesses, Nichole Kelly, in the amount of $2,000. However, Plaintiff failed to demonstrate that such witness expenses are compensable as a measure of her damages and the Court declines to include them in the damages award. This ruling is without prejudice to Plaintiff later showing, in a subsequent motion for attorney's fees or bill of costs, that any of Ms. Kelly's fees or costs are recoverable.