# United States Court of Appeals
## For the First Circuit

---

No. 18-1998

BRIDGET PARKER,

Plaintiff, Appellant,

v.

SCOTT LANDRY, et al.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

---

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

---

Ezra A. R. Willey and Willey Law Offices on brief for appellant.

Aaron M. Frey, Attorney General of Maine, James E. Fortin and Christopher C. Taub, Assistant Attorneys General, on brief for appellees.

---

August 20, 2019

---

**SELYA**, <u>Circuit Judge</u>. The district court dismissed a complaint filed by plaintiff-appellant Bridget Parker against (as relevant here) three Maine prison officials, determining that the complaint did not state a plausible claim. The plaintiff sought leave to amend, but the district court denied her motion. The court ruled that the proposed amended complaint was futile because it failed to state any plausible claims against the three officials. The plaintiff appeals. Concluding that the court below appropriately evaluated the proposed amended complaint and appropriately denied leave to amend, we affirm.

<u>I</u>

We rehearse the relevant facts as set out in the proposed amended complaint, assuming them to be true unless merely conclusory. <u>See</u> D'Agostino v. <u>ev3, Inc.</u>, 845 F.3d 1, 3 (1st Cir. 2016). At the times material hereto, the plaintiff was incarcerated at the Southern Maine Reentry Center (SMRC), a minimum-security facility operated under the aegis of the Maine Correctional Center (MCC) and the Maine State Prison (MSP) by the Maine Department of Corrections (DOC). On occasion, the SMRC allows inmates to participate in outside work-study programs.

While in custody, the plaintiff experienced several instances of unwanted sexual contact with a correctional officer, Joshua Dall-Leighton. Shortly after the plaintiff's arrival at the SMRC in September of 2014, she became the target of sexualized

comments from Dall-Leighton, who was tasked with driving her to and from her employment and educational courses. Dall-Leighton also used his position of authority and his physical control over the plaintiff to initiate multiple sexual encounters with her, beginning in December of 2015. Notwithstanding the plaintiff's repeated attempts to end their carnal encounters, Dall-Leighton persisted in initiating them.

The plaintiff felt unable to reject Dall-Leighton's sexual advances due to both fear of adverse consequences and the power dynamic inherent in the situation. She nonetheless disclosed his misconduct to another correctional officer, Renee Shanks. The latter tried to help the plaintiff limit her interactions with Dall-Leighton but did not report his misconduct to her superiors. In conversations with the plaintiff, Shanks appeared sympathetic to Dall-Leighton, distinguishing him from another correctional officer who reportedly had been fired for "preying" on female inmates at the SMRC.

Around March of 2016, the plaintiff deliberately violated the SMRC's alcohol policy to secure a transfer to a different prison facility (where she would not have any contact with Dall-Leighton). In the new facility, the plaintiff told her story to a fellow inmate, who reported the abuse. This report triggered an investigation and resulted in Dall-Leighton's indictment and dismissal.

On June 14, 2017, the plaintiff repaired to the United States District Court for the District of Maine and sued the warden of the MCC (Scott Landry), a former warden of the MSP (Randall Liberty), and the former commissioner of the DOC (Dr. Joseph Fitzpatrick), whom we shall collectively call "the defendants."[1] With respect to the defendants, the complaint alleged federal constitutional violations, a civil rights conspiracy, and supplementary state-law claims.

The defendants answered the complaint and moved to dismiss. See Fed. R. Civ. P. 12(b)(6). The district court treated the motion as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c); see also Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006) ("Because the defendants previously had answered the amended complaint, the district court appropriately treated their motion to dismiss as one for judgment on the pleadings."). The court proceeded to grant the motion concluding that the plaintiff had not alleged facts sufficient to state any plausible claims against the defendants. See Parker v. Dall-Leighton, No. 2:17-CV-216, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017).

---

[1] The plaintiff's suit also named Dall-Leighton, Shanks, and the State of Maine. She had varying degrees of success against these defendants, ultimately securing a default judgment against Dall-Leighton, settling with Shanks, and losing against the State of Maine on sovereign immunity grounds. Since the details of these forays are not material here, we make no further mention of them.

- 4 -

The plaintiff moved for reconsideration and for leave to amend. At the district court's request, she tendered a proposed amended complaint in which she purposed to fill the gaps that had doomed her original complaint. The district court denied both motions, holding in an unpublished order that allowing the motion to amend would be futile because the proposed amended complaint failed to state any plausible claims for relief. After some further proceedings, not pertinent here, the district court entered a final judgment in favor of the defendants. This timely appeal followed.

## II

We review the district court's disposition of a motion to amend a complaint for abuse of discretion. See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). In most cases — the exceptions are not relevant here — we gauge the court's use of its discretion in keeping with Federal Rule of Civil Procedure 15(a)(2), which directs that leave to amend a complaint "shall be freely given when justice so requires." Consequently, we will affirm the denial of a motion to amend "so long as the record evinces an arguably adequate basis for the court's decision (e.g., futility, bad faith, undue delay, or a dilatory motive on the movant's part)." Hatch, 274 F.3d at 19.

In the case at hand, the district court denied leave to amend on the basis of futility. When — as in this case — a

plaintiff seeks to amend her complaint prior to the commencement or completion of discovery, we view futility through the lens of Federal Rule of Civil Procedure 12(b)(6).  See Privitera v. Curran (In re Curran), 855 F.3d 19, 28 (1st Cir. 2017).  So viewed, a proposed amendment is futile if it fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This is essentially a legal question, which engenders de novo review.  See D'Agostino, 845 F.3d at 6; see also Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008) (explaining that a material error of law is a per se abuse of discretion).

It is common ground that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although there is no need to spell out endless details, the complaint must do more than merely parrot the contours of a cause of action.  See Twombly, 550 U.S. at 555; A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).  Determining whether a claim crosses the plausibility threshold is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Plausibility is not equivalent to probability but it nevertheless demands a showing that is "more than a sheer possibility." Id. at 678.

In assaying plausibility, we engage in a two-step pavane. See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013). First, we separate facts from conclusory allegations. See Iqbal, 556 U.S. at 679. Second, we determine whether the factual allegations that remain give rise to a plausible claim for relief. See Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). This second step entails a decision as to whether the claim as stated admits of a "reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The allegations cannot be "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

In this appeal, the plaintiff challenges only the district court's refusal to grant leave to amend so that she might pursue her federal claims.[2] We limit our discussion accordingly.

We begin with the plaintiff's flagship claims, which hinge on the question of whether the proposed amended complaint plausibly states section 1983 claims for supervisory liability against any or all of the defendants. Section 1983 "affords a

---

[2] For the sake of completeness, we note that certain rulings of the district court had the effect of precluding the plaintiff from pursuing her supplementary state-law claims. Those rulings are not challenged on appeal.

private right of action in favor of persons whose federally assured rights are abridged by state actors." <u>Kando</u> v. <u>R.I. State Bd. of Elections</u>, 880 F.3d 53, 58 (1st Cir. 2018). Here, the defendants, though sued in their individual capacities,[3] were acting under color of state law. Our inquiry, then, focuses on whether the plaintiff has sufficiently shown, at the pleading stage, that their acts and omissions gave rise to plausible rights-abridgement claims.

A supervisory liability claim under section 1983 has two elements: the plaintiff must plausibly allege that "one of the supervisor's subordinates abridged the plaintiff's constitutional rights" and then forge an affirmative link between the abridgement and some action or inaction on the supervisor's part. <u>Guadalupe-Báez</u> v. <u>Pesquera</u>, 819 F.3d 509, 514 (1st Cir. 2016); see <u>Grajales</u> v. <u>P.R. Ports Auth.</u>, 682 F.3d 40, 47 (1st Cir. 2012); <u>Pineda</u> v. <u>Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008). Such culpable action or inaction may comprise, say, a showing of behavior that constitutes "supervisory encouragement, condonation or acquiescence[,] or gross negligence . . . amounting to deliberate indifference."

---

[3] The defendants originally were sued in both their individual and their official capacities, but the district court made short shrift of the official-capacity claims. <u>See</u> <u>Parker</u>, 2017 WL 6210892, at *7 n.9 (citing <u>Will</u> v. <u>Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1998)). The plaintiff has not challenged this ruling.

Grajales, 682 F.3d at 47 (alteration in original) (quoting Welch
v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008)).

The concept of supervisory liability is separate and
distinct from concepts such as vicarious liability and respondeat
superior. See Guadalupe-Báez, 819 F.3d at 515. Although a
supervisor need not personally engage in the subordinate's
misconduct in order to be held liable, his own acts or omissions
must work a constitutional violation. See Iqbal, 556 U.S. at 676.
Facts showing no more than a supervisor's mere negligence vis-á-
vis his subordinate's misconduct are not enough to make out a claim
of supervisory liability. See Guadalupe-Báez, 819 F.3d at 515.
At a minimum, the plaintiff must allege facts showing that the
supervisor's conduct sank to the level of deliberate indifference.
See id. We train the lens of our inquiry there.

A showing of deliberate indifference has three
components: "the plaintiff must show '(1) that the officials had
knowledge of facts, from which (2) the official[s] can draw the
inference (3) that a substantial risk of serious harm exists.'"
Id. (alteration in original) (quoting Ramírez-Lluveras v. Rivera-
Merced, 759 F.3d 10, 20 (1st Cir. 2014)). And even if the complaint
contains facts plausibly showing deliberate indifference, the
plaintiff must also allege facts giving rise to a causal nexus
between the supervisor's acts or omissions and the subordinate's
misconduct. See id. In other words, a supervisor's deliberate

indifference must lead in a straight line to the putative
constitutional violation.  See id.

Here, the proposed amended complaint does not identify
any affirmative acts by any of the defendants that might arguably
constitute deliberate indifference.  Even in the absence of such
facts, though, a plaintiff sometimes can identify a causal nexus
by juxtaposing the supervisor's omissions alongside a "known
history of widespread abuse sufficient to alert a supervisor to
ongoing violations."  Maldonado-Denis v. Castillo-Rodriguez, 23
F.3d 576, 582 (1st Cir. 1994).  But such omissions, if paired only
with "isolated instances" of a subordinate's constitutional
violations, will not clear the causation bar.  Id.

In addition to deliberate indifference and causation,
the plaintiff must allege facts showing that the supervisor was on
notice of the subordinate's misconduct.  See Guadalupe-Báez, 819
F.3d at 515.  Such notice may be either actual or constructive.
See id.

We measure the proposed amended complaint against these
benchmarks.  As to deliberate indifference, the proposed amended
complaint alleges the following:  that prior to Dall-Leighton's
sexual misconduct coming to light, two other Maine correctional
officers were investigated for sexual assault of female inmates,
resulting in the firing of one and the resignation of the other;
that Dall-Leighton was close friends with one of those correctional

- 10 -

officers (Bret Butterfield) and was suspended (for reasons not
stated) during the investigation of Butterfield; that a local
sheriff told a newspaper about his intention to hold a press
conference to discuss indictments of former and current
correctional officers, none of whom were identified; and that a
DOC official (not a party to this case) described Dall-Leighton as
"the Teflon Kid" because "everyone knew he was up to something,
but no one could pin anything on him." Scrutinizing these tidbits,
we agree with the district court that the proposed amended
complaint failed to set forth facts sufficient to make a plausible
showing of deliberate indifference on the part of any of the
defendants.

In this respect, the most obvious flaw in the proposed
amended complaint is the absence of anything that would support an
inference of notice. When — as in this case — there is no
allegation of actual notice, the primary means by which a plaintiff
can show that officials had knowledge of facts from which they
could infer a substantial risk of serious harm is to allege
(plausibly) that the officials were aware of previous and relevant
misconduct by the subordinate in question. See, e.g., Saldivar v.
Racine, 818 F.3d 14, 18-20 (1st Cir. 2016). To this end, the
plaintiff has proffered little more than the "Teflon Kid" comment
and Dall-Leighton's tenuous connection to Butterfield. This is
simply too thin a showing. In order for a subordinate's earlier

conduct to put officials on notice of a substantial risk of serious harm, there must be some fact or facts that, whether viewed singly or in combination, plausibly signal a likelihood that particular misconduct may occur.  See id. at 19; Ramírez-Lluveras, 759 F.3d 21-22.  An isolated incident that concerns arguably relevant misconduct, without more, typically will not be enough to ground a reasonable inference that a substantial risk of serious harm was in prospect.  See Landrigan v. City of Warwick, 628 F.2d 736, 747 (1st Cir. 1980); see also Estate of Bennett v. Wainwright, 548 F.3d 155, 160, 177 (1st Cir. 2008).

In concluding that the plaintiff's proposed amended complaint falls short of the "notice" benchmark, we do not write on a pristine page.  Our decision in Saldivar is instructive.  There, we held that a supervisory liability claim against a police chief was too weak to cross the plausibility threshold.  See Saldivar, 818 F.3d at 20.  Despite a subordinate officer's "lengthy record of [disciplinary] violations," those violations did not indicate "any propensity for violence or for any other sufficiently related conduct."  Id. at 19.  Those violations, such as a lapsed gun license, did not plausibly show that the police chief was deliberately indifferent to the risk that the officer would rape a civilian at gunpoint.  See id.

In a similar vein, the Fifth Circuit held that prison officials' knowledge, without specific details, of an officer's

- 12 -

prior arrest for sexual contact with a minor was insufficient to put them on notice of the risk that the officer would sexually assault an inmate. See Rivera v. Bonner, 691 F. App'x 234, 239-40 (5th Cir. 2017). The officials, therefore, could not be said to be deliberately indifferent to that risk. See id.

The case at hand is governed by substantially the same principles. The plaintiff's factual allegations fail plausibly to show that the defendants had knowledge sufficient to ground a reasonable inference that Dall-Leighton presented a substantial risk of serious harm to female inmates. The vague "Teflon Kid" comment does not plausibly forecast Dall-Leighton's proclivity to be a sexual predator. And the ambiguous suggestion that Dall-Leighton might be "up to something," without further elaboration, is of little consequence. To hold that such a comment places a prison official on constructive notice that sexual predation is in the offing would require a leap of logic that we are not prepared to make.

The plaintiff points out that the proposed amended complaint alleges another fact: that Dall-Leighton was suspended during the DOC's investigation of Butterfield. This allegation does not advance the plaintiff's cause. The proposed amended complaint contains no facts warranting a reasonable inference that Dall-Leighton's suspension was predicated in any way, shape, or form on his own sexual misconduct. For aught that appears, Dall-

Leighton may have been suspended only because he was friendly with
Butterfield and, as a result, the DOC wished to wall him off from
the Butterfield investigation.

The bottom line is that the scanty factual allegations
limned in the proposed amended complaint do not make out a
plausible showing of deliberate indifference and, thus, do not
carry the plaintiff's supervisory liability claims over the
plausibility threshold.   In the last analysis, the complaint
contains no facts sufficient to support a plausible inference that
any of the defendants had reason to believe that Dall-Leighton
presented a substantial risk of serious harm to female inmates.
See Elsevier, 732 F.3d at 81.  Where, as here, a complaint reveals
random puffs of smoke but nothing resembling real signs of fire,
the plausibility standard is not satisfied.

We iron out one wrinkle.   Even in the absence of a
showing that officials knew of a substantial risk of serious harm
at the hands of a particular subordinate, a plaintiff still may,
in rare circumstances, make a plausible showing of deliberate
indifference by alleging facts that indicate "a known history of
widespread abuse sufficient to alert a supervisor to ongoing
violations," from which officials could infer a substantial risk
of serious harm.   Guadalupe-Báez, 819 F.3d at 515 (quoting
Maldonado-Denis, 23 F.3d at 582).  In Guadalupe-Báez, for example,
the plaintiff was shot by an unidentified police officer and sued

- 14 -

the superintendent of the Puerto Rico Police Department (PRPD) under a theory of supervisory liability. See id. at 513. We gave weight to a comprehensive 2011 report by the United States Department of Justice (DOJ), which concluded that "PRPD officers had engage[d] in a pattern and practice of excessive force." Id. at 512 (alteration in original) (internal quotation marks omitted). Relying on the police chief's prior receipt of the DOJ report, we concluded that the plaintiff's shooting was "a predictable culmination of the systemic problems documented in the Report." Id. at 516-17. The DOJ report, we held, allowed the plaintiff to cross the plausibility threshold, "though not by much." Id. at 517.

Although the plaintiff strives to invoke the Guadalupe-Báez exception, this case is at a considerable remove. The plaintiff's allegations fall well short of the pervasive and systemic misconduct chronicled in the DOJ report, which formed the basis for a reasonable inference of constructive knowledge by the supervisor (the PRPD police chief).

Aware of this distinction, the plaintiff posits that the sheriff's statement concerning "some recent indictments involving current and former corrections officers" forms the basis for a reasonable inference that the defendants may have been aware of other relevant indictments. But the proposed amended complaint provides no further information about any such indictments, and

the plaintiff's attempt to connect the sheriff's statement to the misconduct at issue here is woven entirely of gossamer strands of speculation and surmise. Consequently, we conclude that the sheriff's statement to the press does not support a reasonable inference of constructive notice on the defendants' part.

This brings us to the plaintiff's remaining federal claim: that the defendants conspired to deprive her of rights and privileges in violation of 42 U.S.C. § 1985(3). "A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another.'" Estate of Bennett, 548 F.3d at 178 (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). Accordingly, a section 1985(3) claim must contain four elements: "First, the plaintiff must allege a conspiracy; second, [s]he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, [s]he must identify an overt act in furtherance of the conspiracy; and finally, [s]he must show either injury to person or property, or a deprivation of a constitutionally protected right." Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

Once again, the plaintiff trips over the plausibility requirement. Pleading a section 1985(3) conspiracy "requires at least minimum factual support of the existence of a conspiracy."

Francis-Sobel v. Univ. of Me., 597 F.2d 15, 17 (1st Cir. 1979); see Slotnick v. Garfinkle, 632 F.2d 163, 165-66 (1st Cir. 1980) (per curiam). Thus, a plaintiff seeking to allege such a conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights. See Earle, 850 F.2d at 843. Without direct evidence of such an agreement — and none exists here — the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made. See id. A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3). Cf. Estate of Bennett, 548 F.3d at 178 (affirming summary judgment when plaintiff "presented no evidence, either direct or circumstantial of an agreement among defendants from which a reasonable jury could have inferred a conspiracy among them"). So it is here.

In reaching this conclusion, we bear in mind that not every agreement is sufficient to ground a section 1985(3) conspiracy: the agreement must involve "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Thus, the plaintiff needed to allege facts that would permit us plausibly to infer an agreement among the defendants, motivated by some discriminatory animus, to deprive the plaintiff of her right to be free from sexual abuse while in custody. See

- 17 -

Pérez-Sánchez, 531 F.3d at 107.  Her proposed amended complaint is devoid of facts that would warrant such an inference.  It necessarily follows that the district court did not abuse its discretion in deeming her proposed section 1985(3) claim futile.  See Aulson v. Blanchard, 83 F.3d 1, 7 (1st Cir. 1996).

　　　　　The plaintiff makes a last-ditch effort to salvage her federal claims.  She suggests that she needs discovery in order to obtain "internal materials" from state agencies that would support her conclusory allegations and, thus, her federal claims were prematurely dismissed.  This suggestion, though, puts the cart before the horse:  the plausibility analysis takes into account whether "'modest discovery may provide the missing link' that will allow the appellant to go to trial on her claim." García-Catalán, 734 F.3d at 105 (quoting Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012)).

　　　　　The assertion of a need for discovery does not trump the plausibility requirement:  a plaintiff must state a plausible claim before she can invoke a right to discovery.  In other words, a plaintiff can open the door to discovery only if she first alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of actionable misconduct.  Twombly, 550 U.S. at 556.[4]

_____

　　　　[4] The Twombly Court considered this question in the context of an antitrust claim against a telephone service provider.  See

As we already have explained, the proposed amended complaint does not pass this test. It fails to set forth facts plausibly supporting the plaintiff's charges of supervisory liability and civil rights conspiracy. Nor does it set forth facts sufficient to create a reasonable expectation that discovery would be anything more than a shot in the dark. Because there is nothing in the proposed amended complaint that lifts the plaintiff's supervisory liability and conspiracy claims beyond the realm of speculation, we cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678.

## III

We add a coda. The Supreme Court has made pellucid that assault in prison is "not 'part of the penalty that criminal offenders pay for their offenses against society,'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), and we do not hesitate to condemn the deviant behavior of the rogue officer who abused the plaintiff. We find such abuse even more concerning where, as in this case, the inmate alleges that she did all that she reasonably could be expected to do: she alerted a correctional officer — Shanks — to the ongoing misconduct. Here, however, the proposed amended

---

550 U.S. at 548-49. The Court determined that the plaintiffs had not pleaded facts sufficient to clear the "reasonable expectation" hurdle and, thus, had failed to "raise a right to relief above the speculative level." Id. at 555-56.

complaint does not allege that Shanks shared the plaintiff's report with any of her supervisors.  Nor has the plaintiff alleged that the DOC lacked adequate reporting protocols or was otherwise complicit in Shanks's failure to report what she was told up the chain of command.

Given the absence of any such allegations and the lack of any factual averments that would plausibly support a claim of willful blindness on the defendants' part, liability in this case cannot be premised on Shanks's failure to spread the word.  We caution, though, that no one should read our opinion as insulating from liability correctional officials who fail to maintain a meaningful and clearly communicated process for detecting sexual abuse of inmates, as that would be inconsistent with our view of the deliberate indifference standard.

## IV

We need go no further.  Moral indignation alone is not enough to permit a court either to hold prison officials liable for every abuse that occurs within a correctional facility or to authorize a plaintiff to embark on a fishing expedition.  Cf. id. ("It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.").  The facts alleged in the plaintiff's proposed amended complaint are simply too exiguous to make out plausible claims of either supervisory

Case: 18-1996  Document: 94  Page: 21  Date Filed: 08/20/2019  Entry ID: 6284264

liability or civil rights conspiracy against the defendants.[5]
Accordingly, we hold that the district court acted well within the
encincture of its discretion in rejecting as futile the plaintiff's
motion for leave to file her amended complaint.

**Affirmed**.

---

[5]  Indeed, the district court noted that the plaintiff's
allegations seemed to "establish that corrections officials had
acted to investigate and address threats of inmate sexual abuse by
corrections officers."  Parker, 2017 WL 6210892, at *6.